# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 8, 2013

No. 12-20404
Summary Calendar

Lyle W. Cayce
Clerk

DANNY R. HORTON,

Plaintiff-Appellant

v.

CCA PROPERTIES OF AMERICA, LLC, also known as Correction Corporation of America (CCA),

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-2677

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Danny R. Horton ("Horton") appeals the district court's grant of summary judgment in favor of defendant-appellee CCA Properties of America, LLC, also known as Corrections Corporation of America ("CCA"). Horton alleges that CCA, a for-profit corporation that managers and operates correctional facilities, discriminated against him on the basis of age by demoting

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20404

and discharging him, created a hostile work environment, and retaliated against him. He brought his claims pursuant to the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1982. The district court granted CCA's motion for summary judgment. We affirm.

## FACTS AND PROCEEDINGS

### A.

Prior to working for CCA, Horton was employed in the Texas Prison System for the Texas Department of Criminal Justice for thirty-three years. During six of those years, he worked as a Warden for a correctional facility. In December 2007, when Horton was fifty-two years old, CCA hired Horton as an Assistant Warden at CCA's San Diego Correctional Facility in San Diego, California. The facility housed individuals being detained for illegal entry into the United States, the majority of whom had committed no other crime.

After fifteen months, Horton applied for a promotion. In April 2008, after an application process, CCA hired Horton as Warden of CCA's Cimarron Correctional Facility ("Cimarron") in Cushing, Oklahoma. Cimarron was a medium-security facility that housed inmates who presented a higher risk to security than the detainees at the San Diego Correctional Facility. Horton asserts that Cimarron was "in a state of complete system failure" when he was hired. During the nine months he worked as Warden, Cimarron suffered from significant management, safety, and security issues. In January 2009, CCA conducted a facility review because in the thirty days preceding the review, Cimarron experienced numerous finds of contraband, an attempted suicide, a serious assault, and loss of a Class A tool that was recovered only after an inmate revealed its location. The facility review team identified numerous failures in communication, tool control, control of the security equipment and armory, key control, inspections, and unit management. Daren Swenson

2

No. 12-20404

("Swenson"), the Managing Director for CCA's Facility Operations, stated in his affidavit that he informed Horton of the review's results, that the findings were not acceptable, and that changes needed to occur immediately. Horton insists that he was never informed that his performance was deficient.

On January 15, 2009, approximately one week after the facility review was completed, CCA conducted its annual operational audit of the facility. The auditors again found numerous deficiencies in its operation and management. Swenson stated in his affidavit that he informed Horton that he had lost confidence in Horton's ability to be an effective warden and that he placed Horton on administrative leave with pay pending a determination of whether Horton should continue his employment with CCA. Plaintiff asserts that he was never made aware of his performance deficiencies.

On January 26, 2009, Swenson placed Horton on administrative leave. Swenson informed Horton that CCA would try to find an assistant warden position. On February 11, 2009, Swenson informed Horton that there were no assistant warden positions anywhere in CCA. Horton alleges that this statement was false because the Cimarron assistant warden had recently been discharged, but has not provided documentation to support this assertion. Swenson told Horton that there was a Chief of Security position available in Dallas, Texas. The position is a lower paying than an assistant warden position. Horton declined to interview for the job.

On February 2, 2009, while on administrative leave, Horton telephoned Brian Collins ("Collins"), the Vice President of CCA's Facility Operations to find out why he had been demoted. Horton alleges that Collins told him that his "management skills were not suited for the younger generation joining the workforce now, it's not the same when we were coming along." Horton claims that Collins also suggested that Horton "look at going back to school and getting

3

some more management skills, some up-to-date management skills." CCA denies that Collins made these statements.

On February 11, 2009, Swenson informed Horton that CCA was preparing a severance package for him. On February 19, 2009, Collins sent Horton a letter with the enclosed Separation Agreement. The letter stated that "[t]his agreement is based on your decision to resign rather than accept our offer of a position other than Warden at a facility other than Cimarron." The letter also "confirm[ed] that CCA accepts [Horton's] resignation effective February 27, 2009." The letter further noted that the severance agreement did not preclude Horton for applying for any vacancies that arose in any CCA location other than Cimarron. Horton responded to Collins by email and told Collins he had not resigned. Collins sent a response email, explaining:

> We made the decision that you were not able to continue in the position of Warden at Cimarron based on numerous and repeated performance failures. You have not disputed that decision. Normally when such a decision is made there is only one option: termination of employment whether by involuntary separation or voluntary resignation. In your case, we looked for other options. However, as Daren Swenson advised you and as you acknowledge below, there are no available Assistant Warden positions in Business Unit I. Nonetheless, in an effort to find an alternative position for you, we identified a Chief of Security position in Texas and advised you that Jimmy Turner was willing to interview you for the position. You refused to consider that option. Since that was the only option we identified, your refusal to consider it amounts to resignation regardless of whether you actually used the term 'resignation' during your conversations with Daren. We did not offer you and we are not in the position of being able to carry you on CCA payroll until a position which you deem acceptable becomes available.

In the same email, Collins encouraged Horton to sign the separation agreement and told Horton that he would be terminated either way. Horton did not sign the agreement, and CCA terminated his employment with an effective date of February 27, 2009.

No. 12-20404

After terminating Horton's employment, CCA hired Joseph Taylor to be Warden of Cimarron. He was forty-nine years old when he was hired. He had a Bachelor's degree in criminal justice and a Masters degree in counseling. Prior to joining CCA, Taylor worked for the Arizona Department of Corrections for over twenty years, and worked as Warden for two to three years. He then was promoted to the position of Assistant Director, in charge of all the Department's facilities. He then went to work as Assistant Warden at CCA's Florence Correctional Facility in Florence, Arizona. After one year, he was promoted to become Warden at Cimarron.

## B.

On July 28, 2009, Horton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Horton a "right to sue" letter on April 29, 2010. Horton filed a suit in district court on July 28, 2010, and thereafter filed two amended complaints. In his second amended complaint, Horton asserted (1) an age discrimination claim under ADEA; (2) a hostile work environment claim under ADEA and Title VII; and (3) a retaliation claim under 42 U.S.C. § 1982. On September 30, 2011, CCA filed a motion for summary judgment on all Horton's claims. After receiving Horton's reply and allowing him to file a sur-reply, the district court granted CCA's motion for summary judgment on May 18, 2012. Horton now appeals.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

reviewing a grant of summary judgment, we examine the evidence in the light most favorable to the nonmoving party. *Addicks Servs., Inc.*, 596 F.3d at 293.

The moving party bears the burden of demonstrating that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of proof at trial, the moving party may meet its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. While "any reasonable inferences are to be drawn in favor of [the nonmoving] party, *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003), summary judgment should not be denied "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### A.

Pursuant to the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff seeking to establish a claim of age discrimination may put forward either direct or circumstantial evidence of discrimination. *See Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). Because Horton did not produce direct evidence of age

discrimination,[1] he had to put forth a prima facie case of age discrimination by showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and 4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Berquist*, 500 F.3d at 349). Once a prima facie case has been established, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason" for his termination. *Berquist*, 500 F.3d at 349. The burden then reverts to Horton to show that the defendant's reason is merely pretextual. *Jackson*, 602 F.3d at 378.

The district court determined that Horton did not establish a prima facie case of age discrimination because he failed to demonstrate that he was qualified for the position because although his extensive work experience qualified him to be hired, the facility review and annual audit provided CCA with additional information about Horton's management skills that demonstrated that he was not qualified for the position of Warden at Cimarron. The district court also found that Horton did not satisfy the fourth prima facie prong because Horton's replacement was also in the protected class and only five years younger than Horton, which was not a sufficiently significant age difference. *See* 29 U.S.C. § 631(a); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996)

---

[1] In his opposition to the motion for summary judgment, Horton asserted that Collins' alleged statements during the February 2, 2009 telephone call are direct evidence of age discrimination. The district court disagreed, finding that the statement could, at best, support an inference of discrimination but was not direct evidence of it. *See West v. Nabors Drilling, USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003). Horton does not challenge this finding in his appeal brief and therefore waives it. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Moreover, the district court's decision was not in error. Collins' alleged statements were not "direct and unambiguous [such that] a reasonable jury [would] conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (quoting *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). They therefore cannot be considered direct evidence of discrimination.

(holding that in the age discrimination context, an inference of discrimination "cannot be drawn from the replacement of one worker with another worker insignificant younger").

We do not reach these issues because even if Horton established a prima facie case of age discrimination, summary judgment would still be appropriate. CCA put forth a "legitimate, non-discriminatory reason" for Horton's termination, and Horton has not offered evidence of pretext. *See Berquist*, 500 F.3d at 349. CCA offered evidence that Horton was demoted because he had mismanaged the Cimarron facility. After nine months under Horton's management, the facility suffered from serious management, communication, and security issues, which culminated in at least two severe injuries to inmates and rampant problems with contraband. The facility review and annual audit identified numerous issues throughout the facility, including miscommunication and power struggles between management and non-management employees, faulty security procedures, improper or lack of training, improper use of inmates as employees, and general mismanagement. The facility review team found that Horton lacked the necessary initiative, leadership, and management to run Cimarron. Horton does not contradict the results of these assessments. He merely alleges, without supporting evidence, that the facility was in bad shape when he arrived. Even accepting his self-serving assertion, the review and audit results demonstrate that he was not capable of performing the job for which he was hired: to effectively run Cimarron, a medium-security detention facility.

Despite these failures, CCA still did not fire Horton. They looked for another job for him, and offered to interview him for a chief of security position. Horton declined. Because he refused this open position, CCA formally terminated him.

Horton has not shown that the CCA's reasons are pretextual. To support his claim of pretext, he points to Collins' alleged comments and the fact that

Taylor, his replacement, has less work experience than Horton. Even accepting as true Horton's assertion that Collins told him over the telephone that Horton's "management skills were not suited for the younger generation joining the workforce now," and noting that Horton may want to return to school to get "some up-to-date management skills," this does not demonstrate pretext. "In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was a determinative factor in the decision to terminate the employee." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000). Collins' alleged comments are not either direct or unambiguous evidence of discriminatory intent. Collins did not tell Horton he was being demoted because of his age, but rather because he lacked the necessary management skills to effectively manage his staff. With regard to his replacement, Taylor had twenty years of experience in the Arizona Department of Corrections, which is less than Horton's thirty-three years of experience in the Texas Prison System. However, Taylor held a higher position of authority in Arizona than Horton held in Texas, having been  promoted to Assistant Director in charge of all of the Arizona Department of Corrections facilities. Moreover, Taylor's qualifications are not relevant to the reasons for Horton's dismissal. Horton has failed to demonstrate that he was demoted for any reason other than the systemic, widespread management and security failures at Cimarron while he was warden there; and failed to demonstrate that he was fired for any reason other than the fact that he refused to interview for the only position open in CCA for which he was qualified.

**B.**

Horton also asserts that the district court erred in granting summary judgment to CCA on his hostile work environment claim. Hostile work environment claims are cognizable under the ADEA. *Dediol v. Best Chevrolet,*

*Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). However, any ADEA claim must first be administratively exhausted. *See* 29 U.S.C. § 626(d) (prohibiting the filing of any civil action pursuant to the ADEA until "after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission"). Horton does not address or contest the district court's conclusion that he failed to exhaust his hostile work environment claim.

A claim is sufficiently exhausted where it falls within "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). On Horton's EEOC Charge of Discrimination form, he marked the "age" discrimination box. He explained that he was demoted on January 28, 2009, and terminated on February 27, 2009. He cited Collins' alleged explanation for the demotion and the fact that he was replaced Taylor, "a younger employee" in support of his age discrimination claim, and discussed the fact that he was told there were no available assistant warden positions. At no time did he assert that he faced a hostile work environment. Indeed, because he was placed on administrative leave with pay on January 28, 2009 and remained on leave until he was terminated, he was not in the workplace and could not have faced a hostile work environment during the time period he referenced in his charge. Because a hostile work environment charge could not reasonable be expected to have grown out of his charge of age discrimination, the claim was not exhausted.

## C.

Horton also asserts that the district court erred in granting summary judgment to CCA on his claim of retaliation, but does not address the district court's conclusion that such a claim is not cognizable under 42 U.S.C. § 1982 and that he failed to exhaust any ADEA-based claim of retaliation. Horton's second amended complaint asserted a claim of retaliation only in violation of 42 U.S.C.

§ 1982. The district court found that retaliation based on complaints of age discrimination is not cognizable under § 1982 and correctly explained that the case upon which Horton relies, *Gomez-Perez v. Potter*, 553 U.S. 474 (2008), establishes only that federal employees may bring retaliation claims based on complaints of age discrimination under the ADEA, not that retaliation based on complaints of age discrimination are cognizable under § 1982. *See id.* at 491. Horton's second amended complaint did not assert a claim of retaliation pursuant to the ADEA. Even if it did, the claim would fail for failure to exhaust administrative remedies. Horton did not check the box for retaliation in his EEOC charge, assert that he was demoted or fired as retaliation, or assert having taken any actions that would have provoked retaliation. A retaliation claim cannot be said to have been reasonably expected to grow out of Horton's charge of age discrimination, and therefore was not exhausted. *See Pacheco*, 448 F.3d at 789.

## CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendant.