BOWES, Judge.
Louisiana Power & Light Co. (hereinafter simply LP & L) appeals a judgment of the district court in favor of South Central Bell Telephone Company (hereinafter Bell) in the amount of $19,584.97, for the costs of repair and replacement of some of Bell’s underground cables and conduits. These were damaged by the drilling of LP & L while replacing a damaged pole used jointly by both parties. We affirm.
On September 1, 1983, at about 12:30 a.m., a vehicle struck a South Central Bell utility pole located at the intersection of Highway 90 and Wenger Road in Des Alie- *871 mands, La. Soon after, LP & L was notified of the accident and their area serviceman, Mr. Tim Dufrene, traveled to the scene of the accident and observed a broken pole with loose, dangling, lines hanging from it. He determined that a new pole was needed, and notified his crew foreman, Carol Gaubert of the situation. Mr. Gau-bert then immediately arranged for a crew, a new pole, and the necessary equipment, all of which arrived at the accident site about one and one-half hours later.
Arriving on the scene, Mr. Gaubert determined that the damaged utility pole, although jointly used, was owned by Bell and that a Bell aerial cable was connected to the pole, as well as two LP & L lines. Mr. Gaubert decided that it would be necessary to replace the pole, but did not notify Bell of the situation. Without examining the pole route along the highway or the surrounding area for warning signs or other indications of buried cable, the LP & L crew set a new pole in a new hole in a direction away from Highway 90. They secured their own lines to the new pole, but left Bell’s overhead lines dangling from the old pole. The exact location of the new hole is in dispute. LP & L claims it is one foot from the old pole, while Bell claims it is five feet. The trial court made no finding of fact in this issue.
It is contended by LP & L that to relocate the pole in the identical hole of the broken pole (which would have avoided the damage) would have necessitated a delay of several hours under what they termed hazardous conditions. They say that the high voltage lines that were dangling over the highway (but not low enough to touch passing vehicles) would have had to be laid on the road and de-energized, while State Police would have had to be called in to regulate traffic. The trial judge was not convinced of this necessity and we cannot say that her conclusion is clearly wrong.
Early that same morning, Bell began to receive complaints of interrupted telephone service. Upon investigation, they learned of the accident and discovered that in drilling for relocation of the utility pole, the huge auger of LP & L had damaged Bell’s conduits and cables located underground at the site. Bell then set up its pwn new pole in the same hole as the damaged one, transferred their overhead lines, and notified LP & L to transfer their power lines to Bell’s new pole. Bell was later obliged to replace the damaged underground cables in order to restore and maintain service to its customers. Bell then filed this action in tort alleging damages with no reference to any agreement between the parties. A later supplemental petition has a two-line reference to the contract, but it is also in connection with an allegation of negligence.
After trial on the merits, the district court awarded judgment in favor of Bell for the damage in labor and materials to their subterranean lines caused by the auger of LP & L in drilling the hole for the new pole. The court found LP & L liable under a theory of general negligence, stating that “LP & L knew or should have known of the possible existence of the underground cables, and had a duty to determine the placement thereof prior to attempting installation of the new pole, even on an emergency basis.” The court further found that placement of signs warning of buried cables at intervals along the route and other visible signs in the immediate and nearby area (such as a raised manhole cover and an interface box) were adequate to warn LP & L’s “crew of veteran utility company workers” of their presence and to alert them that further inquiry about the precise location of the cables was appropriate. Having found LP & L liable on the theory of negligence, which was the legal basis for relief chosen by Bell in its petition, the court specifically refused to address Bell’s damages on the basis of a contract agreement between the parties, entitled “Joint Use of Poles”, as urged by LP & L.
On appeal, LP & L urges that the trial court erred as follows:
1) In holding it (LP & L) negligent pursuant to delictual theory without reconciliation of the “Agreement Cover *872 ing Joint Use of Poles” between the parties;
2) In imposing liability upon a finding that LP & L knew or should have known of the possible existence of underground cables;
3) In creating a duty between the parties to locate the cables in disregard of the aforementioned agreement;
4) In finding that LP & L should have known of the location of the cables through reference to the warning signs three spans down the road, a raised manhole cover near the site, and/or through a Bell “interface box” 125 feet away from the site, in the dark of night.
5) In finding that the sign placement was adequate to warn LP & L of presence of the cable.
Appellant contends that the trial court should have decided the case pursuant to an agreement between LP & L and Bell, entitled “Louisiana Joint Pole Agreement with Louisiana Power & Light Co” dated January 10, 1979, and, in particular, the Court should have considered the following provisions of Article VII, Sections C and H of this agreement, which state:
C. When it is necessary to replace a Joint Use Pole damaged by lightning, vehicle accident, etc., requiring immediate attention, the OWNER shall promptly replace such pole with a new pole of the required size and strength. If the LICENSEE finds it necessary to replace said pole in an emergency, thé OWNER will reimburse the LICENSEE an amount equal to the In-Place Cost of the new pole plus the removal cost plus an additional amount equal to the above In-Place Cost plus removal cost as an emergency service charge.
H. When replacing a Joint Use Pole carrying terminals of aerial cable, underground connections or transformer equipment, the new pole shall be set in the same hole which replaced pole occupied, unless special conditions make it necessary or mutually desirable to set it in a different location.
Appellant points out that Section C does not require oral notice to Bell when pole replacement is necessitated by an emergency. Therefore, asserts LP & L, notice to Bell was not contemplated in the contract and failure to make such notification did not constitute fault on LP & L’s part. Also, claims appellant, the emergency created by the accident constituted “special conditions” under Section H, which permitted LP & L to relocate the pole in another place. In essence, appellant claims that the contractual relationship arising out of the agreement governs the present situation and places no responsibility on them for Bell’s damages. The trial court disagreed and so do we.
Our brothers in the Second Circuit have held that a person performing excavation work in an area where underground utility cables are located is under the positive duty to inform himself of the location of such cables in order to prevent damaging them. South Central Bell Telephone Company v. Southern Excavation, Inc., 401 So.2d 468 (La.App. 2nd Cir.1981); Southern Bell Telephone & Telegraph Company v. Roy Cook & Sons, Inc., 218 So.2d 404 (La.App. 2nd Cir.1969). We agree. Such a duty arises independently of any contractual relationship between the parties. The present agreement does not purport to abrogate this duty on the part of either party. Therefore, whether or not LP & L was obliged to give oral notice to Bell, or whether it was necessary to relocate the pole, are issues not relevant to our inquiry for the reasons stated hereinafter.
The damages sustained by Bell did not arise out of its contractual relationship with LP & L, or a breach of such contract. The damage arose out of LP & L’s failure to ascertain or even inquire into the location of Bell’s cables before excavation began. '■ The evidence showed that when they arrived the LP & L repair crew recognized that the damaged pole, although jointly used, actually belonged to Bell and they *873 saw overhead wires (telephone and electrical) dangling from the leaning pole. Certainly, this and other warning signs in the area, such as a closely located raised manhole cover (125 feet), and raised interface pedestal (144 feet), should have warned veteran utility workers that there was a strong probability of buried cables also. We are not convinced that these signs were of no significance to an electrical repair crew, as LP & L contends.
But appellant indicates it could not see all of these things in the dark of night. We do not find this argument convincing either. Once LP & L recognized that this was a joint use pole, belonging to Bell, they had a duty to look for further signs of buried underground cables and they do not point out any testimony or evidence to show that any type of reasonable search with or without lighting devices was made.
The duty to determine the presence of underground cables arises separately and independently from the contract. Our reading of that contract convinces us that this document does not alter such duty. The issue of ascertaining the location of underground cables in such a case as this is not addressed in the contract. Therefore, it was not error for the learned trial judge to refuse to consider the contract in her determination of liability.
Accordingly, we are required to determine whether failure of LP & L to locate the presence of the cables was a breach of duty giving rise to delictual liability.
In determining negligence liability, our courts have adopted a duty-risk analysis approach. In order to hold a defendant liable for his negligence, it must be found in the affirmative that:
1. The defendant owed a duty to the plaintiff;
2. That this duty was breached;
3. That the breach of duty was a substantial factor in bringing about harm to the plaintiff — i.e., that it was a cause-in-fact of the harm which occurred; and
4.That the risk and harm encountered by the plaintiff fell within the scope of the protection afforded by the duty breached.
See Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976).
As we observed above, and as the trial court found, LP & L did owe a duty to Bell to determine the location of Bell’s cables before excavating. The trial court also concluded that LP & L knew or should have known of the probable presence of the underground cables. In its reasons for judgment, the trial court found:
Evidence establishes that when the digging began near the location of the old pole, the auger hit “something hard.” They pulled out to see what was being hit but, without making a determination, continued the digging. The crew consisted of veteran utility company workers. A sign warning of the presence of those cables was nearby on a pole 3 down from the broken pole. About 100' away there was a raised manhole cover, and 125' away there was a South Central Bell interface box. [emphasis ours]
The record amply supports these findings by the court. Therefore, we cannot say that the trial judge was manifestly erroneous in her determination that the warning signs were adequate enough to warn LP & L’s veteran repair crew of the presence of buried cables. It logically follows then that LP & L did breach its duty to inform itself of the location of the cables before beginning excavation. But, even worse, when the drilling auger “hit something hard” and resistant, they certainly had a duty to make a bona fide effort to stop and determine what was hit before continuing on with the digging, even under emergency conditions. They did not spend any reasonable amount of time under the circumstances trying to make such a determination.
Under the above analysis, we find that the trial court was correct in its determina *874 tion that LP & L was negligent. The testimony of Mr. Gaubert indicated that an emergency which would have required rerouting traffic did not exist, and the situation was not so critical (it was just after midnight and obviously not much traffic) that Bell could not have been notified, or at least an attempt made. The testimony shows that Bell had a 24-hour emergency notification system and that LP & L knew of this. Presumably, LP & L repair trucks have radio communication or, in any event, a telephone call could have been made to Bell in a matter of minutes to determine if there were any buried cables near the damaged pole which could be damaged by drilling. Bell also offered evidence that it could have responded and reached the location within 30 minutes to assist in the operation and avoid any damage. Instead, LP & L never called or notified Bell, but drove off and left Bell’s overhead lines dangling on the old damaged pole and their subterranean cables severed, completely disrupting telephone service to hundreds of users.
Had LP & L fulfilled the duty incumbent upon it and properly informed itself of the presence and location of the cables, or made even minimum inquiries, it would not have dug through Bell’s lines with the resulting damage; or if they had investigated the identity of the hard object that stopped the auger’s progress, they could probably have avoided all or most of the damages. In fact, it is to avoid this particular risk, as well as to avoid a risk to life and limb, that the duty exists. We are of the opinion that the breach of this duty was the cause-in-fact of the damages suffered by Bell, and that the harm encountered falls within the scope of protection afforded by the duty breached. While the circumstances certainly required prompt attention and correction, we are not convinced that they were of such a nature so as to relieve LP & L of its duty to inquire and inform itself of the location of the cable or to drill more cautiously, or to attempt to notify Bell of the situation.
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). We find no manifest error in the present case.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to appellant.
AFFIRMED.