974 So.2d 749 (2007)
BELLSOUTH TELECOMMUNICATIONS, INC.
v.
EUSTIS ENGINEERING CO., INC.
No. 2007-CA-0865.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2007.
James F. Perot, Jr., New Orleans, LA, for Plaintiff/Appellee.
Laurence R. DeBuys IV, Robert S. Reich, Reich, Album & Plunkett, L.L.C., Metairie, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
The defendant/appellant, Eustis Engineering Company, Inc. ("Eustis"), appeals from a partial summary judgment entered in favor of the plaintiff/appellee, BellSouth Telecommunications, Inc. ("BellSouth"). After reviewing the record and applicable law, we find that genuine issues of material fact exist and, therefore, reverse the judgment and remand the matter to the trial court for further proceedings.
BellSouth filed suit against Eustis and Burkeen Construction Company ("Burkeen"), seeking to recover damages to its underground utility cables located along St. Claude Avenue between the intersections of Elysian Fields Avenue and Frenchmen Street in New Orleans. BellSouth moved for partial summary judgment on the issue of liability contending that because Eustis violated statutory law, it was negligent per se and solely liable for BellSouth's damages. Eustis opposed the *750 motion, arguing that causation was a contested issue of fact and, therefore, summary judgment was inappropriate. On 28 February 2007, the trial court granted the partial summary judgment. In its written reasons for judgment, the trial court stated: "Statutory black letter law was violated and damage ensued when Eustis failed to comply with the applicable statute." The trial court designated the judgment as final pursuant to La. C.C.P.1915 and Eustis brought the instant appeal.
Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts. Stanton v. Tulane University of Louisiana, 00-0403 (La.App. 4 Cir. 01/10/01), 777 So.2d 1242.
In 1988, the Louisiana Underground Utilities and Facilities Damage Prevention Law, La. R.S. 40:1749.11, et seq. ("Damage Prevention Law") was enacted. In particular, La. R.S. 40:1749.13 provides, in pertinent part:
A. Except as provided in this Section, no person shall excavate or demolish in any street, highway, public place or servitude of any operator, or near the location of an underground facility or utility, or on the premises of a customer served by an underground facility or utility without having first ascertained in the manner prescribed in Subsection B of this Section, the specific location as provided in R.S. 40:1749.14(D) of all underground facilities or utilities in the area which would be affected by the proposed excavation or demolition.
B. (1) Except as provided in R.S. 40:1749.15, prior to any excavation or demolition, each excavator or demolisher, including cable television owners or operators, shall serve telephonic notice of the intent to excavate or demolish to the regional notification center or centers serving the area in which the proposed excavation or demolition is to take place. Such notice shall be given to the notification center at least forty-eight hours, but not more than one hundred twenty hours, excluding weekends and holidays, in advance of the commencement of any excavation or demolition activity.
According to this provision, excavators must ascertain the location of underground facilities by calling the notification center, known as "Louisiana One Call," at least forty-eight but not more than 120 hours prior to excavation. Once the call is made to Louisiana One Call, the various utility operators are notified and given a "mark by" date by which the utilities must mark the locations of their underground cables, etc., so the excavator will not damage the underground utilities. The markings are "deemed good as long as visible but not longer than ten calendar days, including weekends and holidays, from the `mark by' time." See La. R.S. 40:1749.14 C(b)(iii).
In the instant case, Chad Held, a project engineer for Eustis, contacted Louisiana One Call on 25 May 2001 to provide notice that it intended to bore soil samples along St. Claude Avenue between the intersections of Elysian Fields Avenue and Frenchmen Street. Louisiana One Call issued a notice of intent to excavate, identified by ticket number 147832, and transmitted the ticket to various utility operators, including BellSouth. The assigned "mark by" date was 29 May 2001 at 3:15 p.m. BellSouth instructed Burkeen, a Bell-South contractor, to mark BellSouth's underground utilities.
Burkeen employee, Charles Hughes, placed orange marks to designate the alleged locations of BellSouth's utilities. According to his deposition testimony and the diagram he drew, Mr. Hughes marked only one telephone line; he allegedly failed to mark a set of copper telephone cables in the area where the soil borings were to be *751 taken. Deposition testimony from BellSouth indicated that there were two sets of lines in the area: copper telephone cables, that were damaged, and fiber optic cables that were not. That testimony further established that Burkeen had access to BellSouth's engineering drawings of utilities at the area where the damage occurred and it was expected to locate both the fiber optic and copper telephone cables.
Within ten days of those marks, Mr. Held placed white marks to indicate safe bore sites along St. Claude Avenue in the areas where no orange utility markings were found. Mr. Held testified in deposition that he did not see any orange marks in the area of the later-damaged cables; however, he did see utility marks in other areas while performing the soil boring project. Eustis personnel returned to the site on 3 July 2001, at which time the excavation that damaged BellSouth's cables and conduit took place.
BellSouth contends that Eustis violated the Damage Prevention Law by failing to begin excavation within 120 hours of notice. In other words, because Mr. Held provided notice to Louisiana One Call on 25 May 2001, actual excavation was required to commence no sooner that 29 May 2001, but no later than 1 June 2001. Actual excavation did not commence until 3 July 2001, more than one month beyond the legal window. In addition, BellSouth argues that Eustis should have provided a second notice to Louisiana One Call because orange markings were not visible to Mr. Held when he visited the site on either 6 June 2001 or 3 July 2001. Because Eustis failed to provide additional notice, BellSouth contends that Eustis is guilty of a second violation of the Damage Prevention Law.
In South Cent., Bell Tel. Co. v. Sewerage and Water Board of New Orleans, 94-1648 (La.App. 4 Cir. 3/16/95), 652 So.2d 1090, this court addressed the Damage Prevention Law when work performed by the defendant damaged the plaintiff's underground cables. In that case, we stated:
In Roberts v. Benoit, 605 So.2d 1032 (La.1991), the Louisiana Supreme Court held that in order to prevail on a negligence claim under La. C.C. articles 2315 and 2316 a plaintiff must prove 5 separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element.) To meet the cause-in-fact element, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident probably would not have occurred. The critical test in Louisiana is phrased in terms of the "ease of association" which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant? The essence of the legal cause inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the duty.
The scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. The scope of protection *752 inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. . . . In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 293-294 (La.1993).
Id. at pp. 3-4, 652 So.2d at 1093-94.
Louisiana has no negligence per se doctrine. Galloway v. State Through Dept. of Transp. and Development, 94-2747 (La.5/22/95), 654 So.2d 1345; Boyer v. Johnson, 360 So.2d 1164 (La.1978); Weber v. Phoenix Assur. Co. of New York, 273 So.2d 30 (La.1973). Therefore, a statutory violation must be determined as a legal cause of the accident. Id. at 33. The jurisprudence is clear that an excavator has a legal duty to inform himself of the location of underground cables. South Cent. Bell Tel. Co. v. Louisiana Power & Light Co., 501 So.2d 869 (La.App. 5 Cir. 1987); South Cent. Bell Tel. Co. v. Southern Excavation, Inc., 401 So.2d 468 (La. App. 2 Cir.1981); Southern Bell Tel. & Tel. Co. v. Roy Cook & Sons, Inc., 218 So.2d 404 (La.App. 2 Cir.1969). However; the finding of a violation of a statute is only the beginning of a duty-risk analysis.
Eustis insists that it did not violate the Damage Prevention Law. In particular, it contends that it began the excavation when Mr. Held marked the bore sites using white paint. When he did so, Burkeen's orange markings were still visible. Furthermore, Mr. Held's markings were made within the ten day "mark by" date, during which Burkeen's markings were deemed valid by statute. Eustis argues that it made its own markings outside of Burkeen's markings and Eustis' markings were still visible during the ongoing excavation. Thus, additional notice was not necessary. In any event, Eustis maintains that the trial court erred by failing to consider the comparative fault of Burkeen in the marking of the utilities for BellSouth.
After reviewing the record, we find that genuine issues of material fact preclude the entry of summary judgment in favor of BellSouth. First, we find genuine issues of material fact regarding causation and Eustis' violation of the Damage Prevention Law. In addition, a genuine issue of material fact exists regarding Burkeen's involvement in the damaging of BellSouth's cables and conduit. If, as Eustis contends, Burkeen marked only one line when they should have marked two, Eustis may be only partially at fault. A finding that Eustis violated the Damage Prevention Law cannot, in and of itself, impose liability on Eustis.
Based on the foregoing, we reverse the partial summary judgment and remand the matter to the trial court for further proceedings.
REVERSED: REMANDED.