STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-494

JOHN THIBODEAUX AND AMY THIBODEAUX,
INDIVIDUALLY AND ON BEHALF OF EMILY
THIBODEAUX AND GABRIELLE THIBODEAUX

VERSUS

GULFGATE CONSTRUCTION, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-4167
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
Candyce G. Perret, Judges.

AFFIRMED.

**Melvin A. Eiden**
**Rabalais & Hebert**
**701 Robley Drive, Suite 210**
**Lafayette, Louisiana  70503**
**(337) 981-0309**
**Counsel for Defendant/Appellant:**
  **J. M. Drilling LLC**

**Max J. Cohen**
**Melanie Lockett**
**Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P.**
**701 Poydras Street, Suite 3600**
**New Orleans, Louisiana  70139-3600**
**(504) 581-2450**
**Counsel for Defendant/Appellee:**
  **Water & Wastewater Utilities, Inc.**

**Janice M. Reeves**
**Maricle & Associates**
**III United Plaza, Suite 350**
**8545 United Plaza Boulevard**
**Baton Rouge, Louisiana  70809**
**(225) 924-9585**
**Counsel for Defendant/Appellee:**
  **Gulfgate Construction, LLC**

**Max Michael Menard**
**Attorney at Law**
**200 Church Street**
**Post Office Box 1196**
**Youngsville, Louisiana  70592**
**(337) 857-6123**
**Counsel for Plaintiffs/Appellees:**
  **John Thibodeaux**
  **Amy Thibodeaux**
  **Gabrielle Thibodeaux**
  **Emily Thibodeaux**

**Edward Taulbee**
**Attorney at Law**
**Post Office Box 2038**
**Lafayette, Louisiana  70502-2038**
**(337) 269-5005**
**Counsel for Plaintiffs/Appellees:**
  **John Thibodeaux**
  **Amy Thibodeaux**
  **Gabrielle Thibodeaux**
  **Emily Thibodeaux**

**Pierre M. Legrand**
**Marshall G. Weaver**
**Legrand Law Firm**
**3939 North Causeway Boulevard, Suite 204**
**Metairie, Louisiana  70002**
**(504) 304-9499**
**Counsel for Intervenor/Appellee:**
  **Bellsouth Telecommunications, LLC**

**KEATY, Judge.**

Defendant/Appellant, J. M. Drilling LLC (J. M. Drilling), appeals the trial court's granting of a motion for summary judgment in favor of Defendant/Appellee, Water & Wastewater Utilities, Inc. (Wastewater). For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

This negligence matter arose on June 9, 2015, when Plaintiff, John Thibodeaux, injured his right leg while splicing fiber optic cable on behalf of his employer, American Telephone & Telegraph (AT&T), at 114 Meadow Gate Drive in the Sawgrass subdivision in Lafayette, Louisiana. Thibodeaux had to access hand holes, which are rectangular, underground vaults where fiber optic cables come together and are spliced. The two hand holes at issue were equipped with covers that rested on top of the ground. They were located near a rectangular, pre-cast slab which held an AT&T cabinet. On the day of his accident, Thibodeaux lifted a hand hole cover and placed it by the AT&T cabinet when the ground beneath him gave way, causing his right leg to fall into a hole, sustaining injury.

Prior to Thibodeaux's accident, Gulfgate Construction, LLC (Gulfgate Construction), and J. M. Drilling performed work on the property pursuant to separate contracts with AT&T. Gulfgate Construction's job, which was the F1 part of the project, consisted of preparing a pre-cast slab, installing a cabinet on top of the pre-cast slab, digging two hand holes, and feeding fiber optic cable into hand hole number two. After Gulfgate Construction finished its job, J. M. Drilling performed the F2 part of the project, which consisted of installing fiber optic cable by accessing the hand holes and feeding the cable out to the rest of the subdivision.

It is alleged that during operations, Gulfgate Construction and/or J. M. Drilling struck and damaged an underground sewer force main line. The main line purportedly began leaking and caused a washout under the pre-cast slab upon which the AT&T cabinet was situated, ultimately forming the hole into which Thibodeaux fell. The main line, which ran from a sewer lift station on the property to the street, belonged to Wastewater, the owner and operator of the lift station. Gulfgate Construction repaired Wastewater's broken main line after Thibodeaux's accident. Wastewater had not marked its main line prior to the commencement of work performed by Gulfgate Construction and J. M. Drilling. The hand holes had to be repositioned as a result of the existence of the underground main line.

On August 24, 2015, Thibodeaux and his wife, Amy, individually and on behalf of their minor daughters, Gabrielle and Emily, filed suit against Gulfgate Construction, Milton Water System, Inc., and Wastewater. Gulfgate Construction is the subject of a separate appeal in this court in Docket Number 17-495. Milton Water System, which has been dismissed, is not the subject of either appeal. On October 8, 2015, Thibodeaux amended his lawsuit, adding J. M. Drilling as a defendant.

On August 23, 2016, Wastewater filed a Motion for Summary Judgment. It was granted for reasons cited in open court by the trial court following a hearing which occurred on January 30, 2017. On that same day, the trial court signed a written judgment dismissing Wastewater from the matter, based upon its finding that "there is no genuine issue of material fact that [Wastewater] is not liable for the damages sued upon." J. M. Drilling appealed.

On appeal, J. M. Drilling alleges the following assignments of error:

2

1.  The trial court erred when it granted Wastewater's Motion for Summary Judgment since Wastewater failed to uphold its statutory duty to mark its lines when notified by Louisiana One[] Call when its underground facilities may be implicated.

2.  The trial court erred in granting Wastewater's Motion for Summary Judgment as the question of whether the failure of Wastewater to mark its lines was a concurrent, causal factor to the injury suffered by Thibodeaux is a question of fact that the jury should decide.

3.  The trial court erred in granting Wastewater's Motion for Summary Judgment based in part on the status of Louisiana One Call as a non-defendant.

## STANDARD OF REVIEW

"Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Greemon v. City of Bossier City*, 10-2828, 11-39, p. 6 (La. 7/1/11), 65 So.3d 1263, 1267. A summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). "The burden of proof rests with the mover." La.Code Civ.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the matter at issue, however, his burden on the motion for summary judgment "does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. Specifically, "[t]he burden is on the adverse party

to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

**DISCUSSION**

**I.      First Assignment of Error:**

In its first assignment of error, J. M. Drilling contends the trial court erred when it granted the Motion for Summary Judgment because Wastewater failed to uphold its statutory duty under the Louisiana Underground Utilities and Facilities Damage Prevention Law to mark its lines when notified by Louisiana One Call when its underground facilities may be implicated.

The Louisiana Underground Utilities and Facilities Damage Prevention Law (Damage Prevention Law) is governed, in part, by La.R.S. 40:1749.11-1749.14 and its "goal is to protect the public from damage resulting from the underground utilities being damaged." *Weatherly v. Fonseca & Assocs., L.L.C.*, 10-495, p. 2 (La.App. 3 Cir. 10/6/10), 48 So.3d 394, 395-96, *writ denied*, 10-2497 (La. 1/7/11), 52 So.3d 887. It requires excavators to "ascertain the location of underground facilities by calling the notification center, known as 'Louisiana One Call,' at least forty-eight but not more than 120 hours prior to excavation." *Bellsouth Telecomms., Inc. v. Eustis Eng'g Co., Inc.*, 07-865, pp. 2-3 (La.App. 4 Cir. 12/19/07), 974 So.2d 749, 750. The parties in this matter refer to this request as a "DOTTIE." After Louisiana One Call receives the call, the "utility operators are notified and given a 'mark by' date by which the utilities must mark the locations of their underground cables, etc., so the excavator will not damage the underground utilities." *Id.*

"Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case." *Cormier v. Albear*, 99-

1206, p. 6 (La.App. 3 Cir. 2/2/00), 758 So.2d 250, 254. Under this analysis, a plaintiff is required to prove five separate elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-366, pp. 8-9 (La. 12/6/11), 79 So.3d 293, 299 (citing *Pinsonneault v. Merchs. & Farmers Bank & Trust Co.*, 01-2217, p. 6 (La. 4/3/02), 816 So.2d 270, 275-76). "The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Hanks v. Energy Corp.*, 06-477, p. 21 (La. 12/18/06), 944 So.2d 564, 579. "Whether the defendant breached that duty and whether that breach was a cause in fact of plaintiff's injuries are factual questions to be determined by the factfinder." *Id.* at 580.

In this case, our inquiry is whether Wastewater owed Thibodeaux a duty under the Damage Prevention Law to mark its main line in conjunction with work performed by J. M. Drilling on the property in question. On appeal, Wastewater contends that it did not owe a duty to mark its main line prior to the commencement of J. M. Drilling's work because it was not notified by Louisiana One Call regarding work to be performed on the property in question. In support, Wastewater offered into evidence at the hearing the affidavit of its employee and supervisor, Randy Savoy. Savoy explained that, prior to excavating land, a contractor is required to obtain a DOTTIE, which requests the owners of underground utilities to mark them so that they will not be damaged during the excavation process. Savoy attested that Wastewater, as the owner of the

underground main line, was never requested to mark its lines pursuant to any DOTTIE requests prior to June 9, 2015, the date of Thibodeaux's accident. Savoy attested that Wastewater had not excavated or performed any work at the property prior to August 31, 2015, the date Wastewater was served the petition herein.

On the other hand, J. M. Drilling contends that Wastewater received notification from Louisiana One Call in connection with two DOTTIEs requested by Gulfgate Construction regarding work that it was going to perform on the property. At the hearing, J. M. Drilling offered into evidence two DOTTIEs, i.e., Louisiana One Call System Ticket Numbers 150016857 and 150047467, which were requested by Gulfgate Construction on January 13, 2015 and February 3, 2015. These two DOTTIEs were for work that was to be performed on January 16, 2015 through February 5, 2015, and February 6, 2015 through February 26, 2015, at the intersection of Meadow Gate Drive and Timber Bark Road. Both DOTTIEs listed Wastewater under the section entitled "Members Notified." J. M. Drilling offered no evidence indicating that Wastewater actually received notification from Louisiana One Call. Therefore, Wastewater's argument regarding lack of notice, supported by Savoy's affidavit, remained undisputed at the hearing. We find no error with the trial court's finding in this regard.

J. M. Drilling also submitted into evidence three additional DOTTIEs, i.e., Louisiana One Call System Ticket Numbers 150049468, 150086745, and 1501225566, which were requested by J. M. Drilling on February 4, 2015, March 13, 2015, and March 26, 2015, for work to be performed at the intersection of Meadow Gate Drive and Timber Bark Road. The work was to occur from February 9, 2015 through March 1, 2015, from March 6, 2015 through March 26, 2015, and from March 31, 2015 through April 20, 2015. Unlike the two DOTTIEs

requested by Gulfgate Construction, Wastewater was not listed as a member to be notified on the three DOTTIEs requested by J. M. Drilling. The trial court recognized that a duty cannot be breached if the duty did not exist, by stating:

> You can't mark the line if you're not notified to mark the line. First you have to say, I'm somebody who needs to be notified. If I'm notified I know I have to mark the line. If they did not receive any notification, then how do they know to mark the line. They didn't know to mark the line, they didn't breach that duty to mark the line after being notified.

The trial court did not err in this regard.

Accordingly, J. M. Drilling's first assignment of error is without merit.

## II. Second Assignment of Error:

In its second assignment of error, J. M. Drilling contends the trial court erred in granting Wastewater's Motion for Summary Judgment as the question of whether its failure to mark its lines was a concurrent, causal factor to the injury suffered by Thibodeaux is a question of fact that the jury should decide.

In opposition, Wastewater contends that even if it breached any purported duty, that breach failed to cause any damage because J. M. Drilling knew or should have known of the underground main line even though it was unmarked. At trial, Wastewater offered into evidence the deposition testimony of Kevin Elfring, J. M. Drilling's Supervisor/Project Manager. Elfring explained that J. M. Drilling, an authorized dealer for AT&T, is a fiber optic communication company that provides directional drilling and also buries communication wires. According to Elfring's testimony, his involvement with J. M. Drilling's work on the property in February 2015 included organizing it, laying it out, and getting the equipment to the site. Elfring explained that the project's plans included a lift station and a manhole cover, which meant that a main line was also present on the property. Elfring

testified that protocol requires Louisiana One Call to be notified in order to have a sewer line marked. He indicated that if it was unmarked despite Louisiana One Call being notified, the next step would be to identify the owner of the lift station, call them, and ask them to mark the line.

Elfring's testimony is supported by the deposition testimony of Gulfgate Construction employees, John Smith and Harold Broussard, submitted into evidence at the hearing by Wastewater. Smith stated that the property at issue was a utility lot, which means a contractor must be more cautious and more aware of digging because of the existence of things buried undergound. He revealed the existence of the lift station and manhole cover meant the existence of a sewer line. Smith agreed that even if lines are not marked despite a DOTTIE request, any person in the business should recognize that caution should be used. Smith further recalled seeing a white, two-inch polyvinyl chloride (PVC) pipe as he was digging a hole.

Broussard testified that the existence of a lift station on the property meant that a sewer line likely existed underground and ran from the back of the fence to the road. He stated that a person digging and excavating needed to use caution because of the existence of lines running throughout the property. Broussard noted his boss told him that "there was a pipe there, two-inch pipe, just to be careful."

Wastewater also submitted the deposition testimony of Adam Romero, another Gulfgate Construction employee. Romero testified that he worked with Smith in January 2015 on the property. According to his testimony, Romero was aware of the lift station, which meant there would be lines running from it to the street. Romero agreed that anybody in the business would need to exercise caution to prevent hitting underground pipes, regardless of whether they were marked or

8

unmarked. Romero recalled digging the hand hole with Smith and discovering a two-inch PVC pipe. According to Romero's testimony, upon uncovering the pipe, they called their supervisor, Kelly Vice.

The foregoing testimony and evidence shows that any purported breach by Wastewater did not cause any damage to Thibodeaux because J. M. Drilling knew or should have known of the underground main line even though it was unmarked. The trial court did not err in this regard.

Accordingly, J. M. Drilling's second assignment of error is without merit.

## III.    Third Assignment of Error:

In its third assignment of error, J. M. Drilling contends the trial court erred in granting Wastewater's Motion for Summary Judgment based, in part, on the status of Louisiana One Call as a non-defendant. J. M. Drilling's alleged error is based upon the trial court's statement at the hearing, as follows: "If Louisiana One Call were also a defendant, then your motion for summary judgment should be denied."

In this case, a reading of the entire trial court transcript indicates that its ultimate decision was not based upon the trial court's one-sentence statement made at the beginning, and prior to hearing all of the evidence. Rather, it was made at the end of hearing all of the evidence and testimony. The trial court dismissed Wastewater based upon Thibodeaux and/or J. M. Drilling's failure to prove the required elements under the duty-risk analysis. We find the trial court did not err in this regard.

Accordingly, J. M. Drilling's third assignment of error is without merit.

**DECREE**

The trial court's judgment in favor of Defendant/Appellee, Water & Wastewater Utilities, Inc., is affirmed. All costs of this appeal are assessed to Defendant/Appellant, J. M. Drilling LLC.

**AFFIRMED.**