ROSEMARY LEDET, Judge.
11 This is a personal injury suit for injuries sustained by the plaintiff when she was bitten by a cat allegedly belonging to the defendant. From the trial court’s judgment granting the motion for summary judgment filed by the defendant and his homeowner’s insurer and dismissing the plaintiffs suit, the plaintiff appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On November 30, 2010, at about 7:30 p.m., Wardette Ducote went for a walk down the sidewalk near her house, which was located at 3547 Rue Colette in New Orleans, Louisiana. At that time, it was dark outside. When she was about ten feet from the nearest street light and twenty feet from her house, she was bitten by a cat. According to Ms. Ducote’s deposition testimony, the incident occurred as follows:
I was taking a walk and I had on a scarf because it was chilly. And as I was walking down the sidewalk a cat just ran up to me and jumped up against my left side. And his paw was pulling on my scarf, so I grabbed it and when I put my arm down he lunged and screamed, the way cats scream, and bit and his tooth sunk into my wrist. And then he ran off.
|aMs. Ducote identified the cat that bit her as belonging to her neighbor, Michael Boleware, who resided at 3534 Rue Colette Street.
At the time of the incident, Ms. Ducote’s sister and housemate, Sue Bordelon, was standing outside them house talking on her cell phone. In her affidavit, Ms. Bordelon described the incident as follows:
Dee [Ms. Ducote] was about 20 feet away from me on the sidewalk when I saw Buddy the cat [that belonged to Mr. Boleware] walking fast towards her....
⅜ ⅜⅞ *1» ⅜
[[Image here]]
[M]y sister continued walking on her stroll, then I saw Buddy leap up on her and he bit her left hand or wrist. Dee screamed in pain and then came running toward me; she had a lot of blood dripping from her wrist, from where Buddy had bitten her. I am 100% certain that it was Buddy, Mr. Boleware’s cat, who leaped onto Dee’s hand and bit her wrist, I have seen this cat often and am very familiar with his look.
Following the incident, Ms. Ducote returned to her house to clean the bite wound and to stop the bleeding, which took about twenty minutes. After doing so, Ms. Ducote and Ms. Bordelon went to Mr. Boleware’s house to inquire whether his cat was current on his rabies vaccination. Ms. Bordelon explained that the reason they did so was because the emergency room doctor would need to know if the cat was vaccinated for rabies. According to Ms. Bordelon’s affidavit, “Mr. Mike [Boleware] said he thought his cat had been vaccinated at one time, but he wasn’t sure, he thought his daughter may have brought Buddy to the Fire Station one day [to be vaccinated.]” According to Mr. Boleware’s deposition testimony, he informed Ms. Ducote and her sister that he did not know where his proof of vaccination was and that he would look for it. Mr. Boleware’s explanation as to |swhy he did not keep his cat inside was that he also had a dog that he kept inside, and his dog would eat the cat litter.
*937 After leaving Mr. Boleware’s house, Ms. Ducote went to the emergency room where she was treated and released. The emergency room physician’s notes regarding Ms. Ducote’s treatment are as follow:
Patient is concerned about possible contraction of rabies. Mandible that attacked her belongs to a neighbor. However, the neighbor cannot produce evidence that the animal has been vaccinated and he lets the cat run loose. The patient is concerned because there are bats and raccoons in her neighborhood which could carry rabies and pass it on to the cat. The animal attacked her unprovoked and then the animal came up and sat next to the owner and then bit the owner when he tried to pick it up. I discussed with the patient that it is less likely that the animal has rabies, but I can not [sic] be 100% certain. The patient prefers the certainty of having the immunoglobulin and the vaccine while the animal is observed by the authorities.
After she returned from the emergency room, Ms. Ducote called the police and animal control to report the incident. Two days later, a LA/SPCA Animal Control officer came to the scene of the incident to investigate. According to the Animal Control officer’s incident report, Mr. Boleware was cited for violating the following two City of New Orleans ordinances: (i) § 18-14, roaming at large;[1] and 14(ii) § 18-170, proof of rabies vaccination.[2] The incident report states that the reason for the charges against Mr. Boleware were that the biting incident took place across the street from his property and that Mr. *938 Boleware was unable to produce a current rabies vaccination certificate for his cat.
Because Mr. Boleware was unable to produce a current rabies vaccination certificate for his cat, the Animal Control officer informed Mr. Boleware that his cat was required to spend the ten-day quarantine period at the SPCA.[3] Although the Animal Control officer was unable to capture the cat and take it into custody, Mr. Boleware surrendered the cat to the SPCA later that evening. According to the SPCA records, on December 2, 2010, the cat, Buddy, appeared to be a normal, healthy adult cat; and the cat’s temperament was noted as “friendly.” On December 9, 2010, the cat was released from quarantine with no sign of rabies. In |fithe meantime, Ms. Ducote underwent a series of anti-rabies treatments (vaccinations and inoculations).[4]
On April 25, 2011, Ms. Ducote filed this suit against Mr. Boleware and his homeowner’s insurer.[5] In her petition, Ms. Du-cote alleges the following:
• On November 30, 2010, Plaintiff, Defendant’s neighbor, was viciously, without provocation, and through no fault of Plaintiff, attacked in Orleans Parish, in Plaintiffs yard by a cat owned, housed, and cared for by Defendant Boleware. The cat bit deeply into Plaintiffs wrist, causing a painful and serious puncture wound.
• Defendant’s offending cat was allowed by Defendant Boleware to run freely in the neighborhood, and was not vaccinated against rabies.
• As a direct result of the cat bite, Plaintiff was required to undergo expensive, painful, and dangerous medical treatments, including the series of anti-rabies vaccine injections.
• Plaintiffs damages were caused solely by the negligence of Defendant Bole-ware in failing to confine his cat, failing to have his cat properly vaccinated against rabies, and/or failing to maintain records of any such vaccination, all in breach of his legal duty and in direct violation of New Orleans Code of Ordinances §§ 18-14, 18-168, 18-169, and 18-170.
Mr. Boleware answered the petition and filed a motion for summary judgment. Following a hearing, the trial court granted the motion for summary judgment and dismissed Ms. Ducote’s suit with prejudice. This appeal followed.
J^DISCUSSION
The well-settled standard of review of a trial court’s ruling granting a motion for summary judgment is as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria *939 applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, them burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.
Johnson v. Loyola Univ. of New Orleans, 11-1785, pp. 7-8 (La.App. 4 Cir. 8/8/12), 98 So.3d 918, 923-24; see also Mandina, Inc. v. O’Brien, 13-0085, p. 9 (La.App. 4 Cir. 7/31/13), 156 So.3d 99, 104-05, writ denied, 13-2104 (La.11/22/13), 126 So.3d 485 (collecting cases).[6]
Because the applicable substantive law determines materiality, the determination of whether a fact is “material” for summary judgment purposes can only be made on the basis of the governing substantive law. Citron v. Gentilly Carnival Club, Inc., 14-1096, p. 13 (La.App. 4 Cir. 4/15/15), 165 So.3d 304, 313.

Cat Oumer’s Liability

In Louisiana, the liability of an animal’s owner is governed by La. C.C. art. 2321, which, as amended in 1996, provides as follows:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal’s behavior would cause damage, that the damage could have been prevented by *940 the exercise of reasonable care, and that he failed to exercise such reasonable care.
The second sentence of Article 2321 abolishes strict liability for animal owners (except dogs); “the basis of liability for animal owners (except dogs) is now negligence.” Frank L. Maraist & Thomas C. Galligan, Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L.Rev. 339, 353 (1996) (hereinafter “Burying Ceasar”); Pepper v. Triplet, 03-0619, p. 13 (La.1/21/04), 864 So.2d 181, 191 (noting that “the standard for owners of animals other than dogs is ordinary negligence” and citing Frank L. Maraist and Thomas C. Galligan, LOUISIANA TORT LAW, § 14-7 (1996) (hereinafter “Maraist & Galligan”); and Joseph F. Piacun, Comment, The Abolition of Strict Liability in IsLouisiana: A Return to a Fairer Standard or an Impossible Burden on Plaintiffs?, 43 Loy. L.Rev. 215 (1997) (hereinafter “Abolition of Strict Liability ”)).
The amendment to Article 2321 returns the law for animals (other than dogs) to the standard that was applied before Holland v. Buckley, 305 So.2d 113 (La.1974)— the scienter standard—i.e., the first bite rule.[7] See Abolition of Strict Liability, 43 Loy. L.Rev. at 233 (noting that “[arguably, the new standard returns the law to the ‘first bite rule’ existing prior to Holland ”); see also Burying Ceasar, 71 Tul. L.Rev. at 353 (noting that “[t]he ‘first bite’ rule has returned”); Maraist & Galligan, supra (noting that “the ‘first bite’ rule does not apply to dog owners, while the ‘first scratch’ rule applies to cat owners”). Before Holland, “[t]he ‘first bite’ rule, a logical application of negligence principles, exonerated from liability the owner of an animal who neither knew nor should have known that the animal posed some danger, i.e., it might scratch, bite, gore, or maim. Because the dog had not bitten before, the owner could not foresee that ‘first bite’ and thus was not negligent when it first bit.” Burying Caesar, 71 Tul. L.Rev. at 352. According to the “first bite” rule, “if an animal has not been shown to be previously vicious, the animal (usually applied to dogs) gets the first bite free.” Abolition of Strict Liability, 43 Loy. L.Rev. at 233, n. 115 (citing Holland, 305 So.2d at 155).
In Losch v. Travelers Insurance Company, 264 So.2d 240 (La.App. 4th Cir.1972), which was overruled by Holland, this court stated the pre-Holland jurisprudential standard as follows:
loThe owner’s liability for an animal that causes injury is predicated upon LSA-C.C. Articles 2321, 2315, and 2316. These articles, taken in conjunction, have received uniform interpretation by the courts of this state regarding cases of a nature similar to the present one. Thus, for an owner of a domesticated animal (which is regarded as inherently safe) to be considered at fault and therefore liable for injuries caused by the animal, the animal must manifest a dangerous or vicious temperament, recognizable as such by a reasonable person, so that the owner knew, or through legal consequence should have known, from a prior occurrence or experience, that the animal evinces vicious or dangerous propensities.
Before Holland, the majority of Louisiana courts imposed on the plaintiff-victim *941 the burden of proving the following two elements: (i) the existence of a dangerous propensity of the animal, and (ii) the defendant-owner’s knowledge of such propensity. Abolition of Strict Liability, 43 Loy. L.Rev. at 232; Rolen v. Maryland Cas. Co., 240 So.2d 42, 45 (La.App. 2d Cir.1970) (overruled by Holland, supra). The jurisprudence recognized that “there was no general duty to guard against harm to third persons until the animal had displayed dangerous propensities, i.e., the ‘first bite was free.’” Maraist & Galli-gan, supra, § 14-7. The effect of the amendment to Article 2321 is to return the law to this pre-Holland negligence standard. See Abolition of Strict Liability, 43 Loy. L.Rev. at 233 (noting that pursuant to Article 2321, “an owner of a domesticated animal must be shown to have known that the animal had a previous history of a vicious temperament, or that the owner knew or should have known of the dangerous propensity in the animal.”).[8]

hoMr. Boleivare’s Liability

In connection with Mr. Boleware’s motion for summary judgment, the following three issues were identified: (i) the liability issue of whether Mr. Boleware’s cat was the cat that bit Ms. Ducote; (ii) the liability issue of whether Mr. Boleware knew or should have known that his cat’s behavior would cause danger—the scienter element or theory; and (iii) the damages issue of whether the anti-rabies treatments (vaccinations and inoculations) that Ms. Ducote underwent were medically unnecessary.
In granting Mr. Boleware’s motion, the trial court, in its oral reasons for judgment, addressed all three issues as follows:
[T]he cat wasn’t identified. The next thing is the cat was quarantined, cat came through the quarantine with flying colors, didn’t exhibit any rabies. So the rabies treatment that the plaintiff undertook was unnecessary if Mr. Bole-ware’s cat was indeed the perpetrator. But transcending that, the body of law in the State of Louisiana indicates dogs, cats, animals, possibly get one free bite, because unless they exhibit some dangerous propensity that requires the owner to warn or to make sure the animal is secured....
******
But based upon the fact that I don’t see any definitive evidence that this was indeed the defendant’s animal, and secondly, because of the law as I know ij;, that this animal there’s been no exhibit that there’s any dangerous propensities *942 on the part of the animal, I don’t know how you prevail today.
The trial court thus granted Mr. Bole-ware’s motion for summary judgment.
|nOn appeal, Ms. Ducote contends that the trial court erred in granting Mr. Bole-ware’s motion for summary judgment. She contends there is a genuine issue of material fact as to Mr. Boleware’s ownership of the cat that bit her. In support, she cites Ms. Bordelon’s statement, in her affidavit, that she saw the attack and that she was sure it was Mr. Boleware’s cat that bit Ms. Ducote. Ms. Ducote further contends that the trial court, agreeing with Mr. Boleware, relied on an inapplicable scienter theory of liability. She points out that she never asserted the scienter theory of liability as a basis for her suit. Instead, she asserted, in her petition, that Mr. Boleware’s negligence was his violation of the applicable New Orleans Code of Ord-nances—allowing Buddy to roam the neighborhood freely, failing to have Buddy vaccinated for rabies, and being unable to provide proof of rabies vaccination when requested. Finally, Ms. Ducote contends that the issue of whether the medical treatment she received—the series of anti-rabies vaccines and inoculations—was medically necessary only becomes relevant on the issue of damages; hence, she contends this issue is not relevant in deciding whether Mr. Boleware was negligent.
We find it unnecessary to address either the liability issue of whether it was Mr. Boleware’s cat that bit Ms. Ducote or the damages issue of whether the medical treatment Ms. Ducote received was necessary.[9] Instead, we confine our analysis to the issue of whether the trial court, as Ms. Ducote contends, erred in relying on a scienter theory of liability. Citing the scienter element or theory, the trial court, in its oral reasons for judgment, reasoned that Louisiana law requires a plaintiff to prove that the animal exhibited dangerous propensities before the 112attack. The trial court found that the record in this case was devoid of any evidence that Mr. Bole-ware’s cat had exhibited dangerous propensities before the incident in question. To the contrary, the trial court noted that “Mr. Ducote [Ms. Ducote’s attorney] indicated everyone knew the cat. The eat used to lay [sic] in the street and children used to pet it, for 12 years and never did anything.”
Mr. Boleware, as the mover for summary judgment, was only required to establish the lack of proof as to one element of Ms. Ducote’s theory of liability— negligence—to shift the burden of proof. Mr. Boleware contends that he did so by establishing the lack of proof as to the scienter element required under La. C.C. art. 2321 to establish a negligence claim against the owner of an animal (other than a dog). The record reflects that Mr. Bole-ware carried his initial burden on summary judgment of establishing that he did not know or have reason to know of any vicious propensities on the part of Buddy; thus, the scienter element could not be established. In support of his motion for summary judgment, Mr. Boleware presented evidence of the following facts establishing his lack of scienter:
• Buddy is a ten to twelve year old eat;
• Mr. Boleware adopted Buddy as a kitten from the SPCA and has owned him the entire time;
• During that time, Buddy has never bitten or scratched anyone;
• During that time, Buddy has never shown any signs of any type of aggression towards anyone; and
*943 • Mr. Boleware testified that “[t]he little girls down the street came down to my house and up the driveway and played with the cat and never any incidents.”
• The SPCA, during Buddy’s internment there for observation, noted that he was “friendly” and never showed any signs of rabies or strange behavior.
| ^Thereafter, Ms. Ducote failed to present any evidence to establish that she would be able to meet her evidentiary burden at trial of establishing scienter.
On appeal, Ms. Ducote does not suggest that there is any evidence that Mr. Bole-ware knew or should have known that Buddy had dangerous propensities. The gist of Ms. Ducote’s position is that her theory of the case was not based on the scienter theory of liability; rather, as noted above, it was based on Mr. Boleware’s violation of certain city ordinances. She thus contends the scienter theory of liability is inapplicable.
Mr. Boleware counters that Ms. Ducote fails to cite any specific ordinance that he violated. Regardless, he notes that the evidence reflects his cat was vaccinated for rabies[10] and that there is no ordinance requiring a cat owner to confine his cat at all times. See City of New Orleans Ordinance § 18-14 (providing that “[cjommunity cats may be allowed outside so long as the cats do not prove to be a nuisance to neighbors.”). Moreover, he contends that despite Ms. Ducote’s contentions regarding her reliance solely on a negligence per se theory, the governing law in this case is the duty-risk analysis, in general, and La. C.C. art. 2321, in particular, which impose a negligence standard on animal owners (other than dogs). We agree.
Ms. Ducote’s position is based on two doctrines that have been rejected by the jurisprudence—theory of the case and negligence per se. “Louisiana utilizes a system of fact pleading. Accordingly, it is not necessary for a plaintiff to plead the | utheory of his case in the petition.” State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C., 10-2264, p. 9 (La.5/10/11), 63 So.3d 940, 946. Ms. Ducote’s petition alleges a negligence cause of action against an animal owner. As discussed above, a negligence cause of action against an owner of a cat requires proof of scienter to prevail. See La. C.C. art. 2321. Contrary to Ms. Ducote’s contention, her failure to plead the scienter theory of liability does not render immaterial the scienter element of a negligence cause of action against an animal’s owner.
Although Ms. Ducote did not expressly plead negligence per se in her petition, her reliance on Mr. Boleware’s alleged violation of ordinances to establish liability is, in essence, premised on a negligence per se theory. Particularly, her argument on appeal is that “[i]n Louisiana, the violation of a statute gives rise to civil liability when the prohibition in the statute is designed to protect from the harm or damage which would occur if it is violated, and the violation was the legal cause of the damages sued upon.” In support of this position, she cites Burns v. CLK Investments, 10-0277 (La.App. 4 Cir. 9/1/10), 45 So.3d 1152. Continuing, she contends that the ordi *944 nances that Mr, Boleware violated were designed to protect plaintiffs—such as her—from being bitten by roaming cats and then subjected to anti-rabies treatment because the cat’s rabies status was unknown.
As noted above, Louisiana does not recognize the negligence per se doctrine. Indeed, this court so held in the Bums case, which Ms. Ducote cites. In so holding, we reasoned in the Bums case as follows:
In a classic decision, the Louisiana Supreme Court ... held:
While statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the |1ficourt in determining standards of negligence by which civil liability is determined.
Smolinski v. Taulli, 276 So.2d 286, 289 (La.1973). One of the general principles applied by the Supreme Court in Smo-linski, which is highly pertinent to the Burnses’ arguments about so-called “negligence per se,” is that “[ajctionable negligence results from the creation or maintenance of an unreasonable risk of harm.” Smolinski, supra at 288. Thus, it is clear that even when the violation of a statute is proved, such is not a substitute for proving the existence of “an unreasonable risk of harm.”
Moreover, we consider the Burnses’ continued reliance upon a theory of “negligence per se” to be completely misplaced. “The doctrine of negligence per se has been rejected in Louisiana.... However, statutory violations provide guidelines for civil liability.” Galloway v. State, Dept. of Transp. and Development, 94-2747, p. 5 (La.5/22/95), 654 So.2d 1345, 1347; see also Bellsouth Telecommunications, Inc. v. Eustis Engineering Co., Inc., 07-0865, p. 5 (La. App. 4 Cir. 12/19/07), 974 So.2d 749, 752.
Burns, 10-0277 at p. 8, 45 So.3d at 1158.
Likewise, in Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292-93 (La.1993), the Supreme Court stated that “[tjhe violation of a statute or regulation does not automatically, in and of itself, impose civil liability. Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another.” Id. Hence, “a statutory violation must be determined as a legal cause of the accident,” and “the finding of a violation of a statute is only the beginning of a duty-risk analysis.” Bellsouth Telecommunications, Inc. v. Eustis Eng’g Co., 07-0865, p. 6 (La.App. 4 Cir. 12/19/07), 974 So.2d 749, 752.
Contrary to Ms. Ducote’s contentions, she was required, in order to establish liability of Mr. Boleware for his cat allegedly biting her, to establish negligence under the duty-risk analysis, in general, and La. C.C. art. 2321, in particular. Under the traditional duty-risk analysis applicable to negligence claims, a plaintiff must prove each following five elements: (1) the defendant had a duty to conform his | ] a conduct to a specific standard (the duty element); (2) the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 7 (La.3/10/06), 923 So.2d 627, 633. If a plaintiff fails to prove any one of the five elements, a defendant will not be held liable. Id.
*945 “The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide.” Mathieu v. Imperial Toy Corp., 94-0952, p. 5 (La.11/30/94), 646 So.2d 318, 322 (citing Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984)). In answering this question, “the inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim.” Faueheaux, 615 So.2d at 292 (citing Green, The Causal Relation Issue and Negligence Law, 60 Mich.L.Rev. 543, 562-63 (1962)).
Although it generally is inappropriate to resolve negligence cases on summary judgment, an exception has been recognized when there is a categorical rule of no liability. Cowan v. Jack, 05-0175, pp. 15-16 (La.App. 4 Cir. 12/21/05), 922 So.2d 559, 569-70.[11] Such is the case here. The first bite rule is a categorical 117rule of no liability absent proof of scienter. Under the first bite rule, there is no general duty to guard against harm to third persons until the animal has displayed dangerous propensities, i.e., the “first bite is free.” See Maraist & Galligan, supra, § 14-7.[12] As discussed above, Mr. Boleware presented proof of his lack of scienter. Ms. Du-cote failed to present any proof to establish that she would be able to meet her evidentiary burden at trial of establishing scienter. Instead, she relies solely on Mr. Boleware’s alleged violation of City ordinances,
As noted, statutory violations are not negligence per se; however, statutory violations are relevant evidence in determining whether a defendant owed the plaintiff a legal duty. As Mr. Boleware points out, Ms. Ducote does not reference particular ordinances; rather, her contention, as noted earlier, is that Mr. Bole-ware’s negligence was his violation of the *946 applicable New Orleans Code of Ord-nances by (i) allowing Buddy to roam the neighborhood freely, (ii) failing to |1shave Buddy vaccinated for rabies, and (iii) being unable to provide proof of rabies vaccination when requested. We separately address each of these allegations.
First, as to the allegation that Mr. Bole-ware allowed Buddy to roam the neighborhood freely, the record contains no evidence to support a violation of the City ordinance requiring owners of a cat to prohibit them cat from roaming the neighborhood. See City of New Orleans Ordinance § 18-14. As Mr. Boleware points out, the ordinance contains an exception for cats—“[c]ommunity cats may be allowed outside so long as the cats do not prove to be a nuisance to neighbors.” Id. A “community cat” is defined as “a feral or free-roaming cat that is without visibly-discernible identification of any kind and has been sterilized, vaccinated, and ear-tipped.” City of New Orleans Ordinance § 18-1. For purposes of our analysis, we find it unnecessary to determine whether Buddy was a community cat. Regardless, as the court noted in Jackson v. Mateus, 70 P.3d 78, 83 (Utah 2003), “no other jurisdiction has recognized a duty on the part of a cat owner to restrain or muzzle a domestic cat that has demonstrated no previous propensity to cause harm.” Id. (collecting cases including Boyer v. Seal, 553 So.2d 827, 832 (La.1989)); see also Cheryl M. Bailey, Annot., Liabilities for Injuries Caused by Cat, 68 A.L.R.4th 823 (1989). Ms. Ducote’s reliance on this ordinance as creating a duty is thus misplaced.
Second, as to the allegation that Mr. Boleware failed to have Buddy vaccinated for rabies, Ms. Ducote testified that his cat was vaccinated; however, he was unable to locate proof of the vaccination. Ms. Ducote does not dispute Mr. Boleware’s testimony that his cat was vaccinated. Moreover, Mr. Boleware was not cited by Animal Control for violation of that ordinance; rather, he was cited for failure to provide proof of current vaccination status, which we address next.
| iflThird, as to Mr. Boleware’s inability to provide proof of rabies vaccination when requested, the result of this violation was that he was required to surrender his cat to Animal Control for observation. If he had proof of the vaccination, the observation could have been conducted in his own home. Ms. Ducote contends that another result of Mr. Boleware’s inability to provide proof of rabies vaccination when requested was that she was required to undergo a series of anti-rabies treatments (vaccinations and inoculations).
In response, Mr. Boleware emphasizes that immediately after the incident Ms. Ducote sought to commence the anti-rabies treatments at the hospital; indeed, he contends that she demanded such treatments against medical advice. Moreover, he notes that she did so despite that his cat, Buddy, was captured and held for observation. On this issue, Mr. Boleware, in support of his motion for summary judgment, produced an affidavit[13] and a report of Dr. Jeffrey Coco, an infectious disease expert, who opined that the anti-rabies treatments that Ms. Ducote underwent were medically unnecessary. Dr. Coco explained his opinion as follows:
[T]he risk of rabies from a cat bite in Orleans Parish approaches zero. IG *947 [rabies immune globulin] is indicated for high risk exposures only, thus not indicated and represents poor decision making on the part of the ER staff. If the animal could not be located for observation, then rabies vaccine may be offered. The animal was domestic, captured, and quarantined and cleared of rabies. Most health care professionals] would have reassured the bite patient with facts, and waited to give vaccine only if the cat failed quarantine or could not be located.
In rebuttal, Ms. Ducote offered no medical evidence. Her only proof in rebuttal was her medical records, her deposition testimony, and the affidavit of her 12(lsister. Both she and her sister stated their belief that it was medically necessary for her to begin the anti-rabies treatments immediately. Although both Ms. Ducote and her sister testified that they were registered nurses, neither was qualified to opine on the issue of the medical necessity of the anti-rabies treatments. Moreover, the emergency room physician expressly noted that Ms. Ducote “prefers the certainty of having the immunoglobulin and the vaccine while the animal is observed by the authorities.”
The trial court found, agreeing with Mr. Boleware, that the anti-rabies treatments were unnecessary since the “cat came through the quarantine with flying colors, [and] didn’t exhibit any rabies. So the rabies treatment that the plaintiff undertook was unnecessary.” This finding is supported by Dr. Coco’s affidavit and report, which Ms. Ducote failed to rebut with competent expert evidence. Thus, even assuming the violation of the ordinance requiring an owner to provide proof of current rabies vaccination status supports a duty on the part of the owner to a plaintiff in Ms. Ducote’s position, the record does not support a finding that Mr. Boleware’s violation of that ordinance was the legal cause of Ms. Ducote undergoing the anti-rabies treatments. Accordingly, we find no error in the trial court’s judgment granting Mr. Boleware’s motion for summary judgment and dismissing Ms. Ducote’s suit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. Section 18-14 provides as follows:
(a) Except as provided herein below, all cats and dogs are to be confined within a secure, enclosed fence that is a minimum of four feet tall and shelter as outlined in section 18-2.1(a)(1) or properly tethered as outlined in section 182.1(b) at all times, unless accompanied by an owner, driver or keeper.
(b) Dogs which are properly licensed and vaccinated as stipulated in this chapter may be allowed outside of an enclosure if under a secure leash and accompanied by their owner or keeper but are not to be allowed to trespass upon any public property, if so prohibited by another ordinance, or upon private property. Designated dog parks or ''off-leash” areas are exempt from the provisions of this section. The area of City Park known as NOLA Bark generally bounded by Zachary Taylor Drive, Diagonal Drive, and Magnolia Drive is such an exempted area.
(c) All indoor/outdoor cats that are privately owned must be microchipped or ear tipped.
(d) Community cats may be allowed outside so long as the cats do not prove to be a nuisance to neighbors. Any ear-tipped cat collected under the provisions of this section shall be released on-site unless suffering from an obvious injury or illness. Any non-ear-tipped cat collected under the provisions of this section shall not be returned to its owner until such time as said owner shall have the cat spayed or neutered, ear tipped or microchipped, and vaccinated against rabies, and all nuisance complaints are resolved. Repairing damage caused to private property as well as any required modifications required to abate the nuisance shall be the responsibility of the registered caregiver.
(e)Notwithstanding the provisions of this section allowing otherwise, no dogs other than dogs in parades in which dogs are the main attraction or sole participants, dogs confined on the property of their owners, dogs assigned to law enforcement canine units, seeing-eye dogs and/or dogs assisting physically challenged individuals, are allowed within 200 yards of any parade route one hour before, during, or one hour after a scheduled parade.

. Section 18-170 provides as follows:
Upon request of the director or the agency, the owner, or keeper of any dog or cat must furnish evidence as required in section 18-230 that such dog or cat has been vaccinated by a licensed Louisiana veterinarian and is current on its vaccination against rabies as required in section 18-168.

. If Mr. Boleware had the proof of vaccination, the cat could have been quarantined in his house.

. According to Ms. Ducote’s medical records, she returned to the hospital to commence the anti-rabies treatments on the day after the incident, December 1, 2010. On that date, the hospital did not have the rabies immuno-globulin; it had to be special ordered. Thus, Ms. Ducote returned to the hospital on the following day and was given the rabies immu-noglobulin. Thereafter, she underwent the remainder of the series of anti-rabies treatments.

.The petition also named as a defendant "ABC Insurance Company,” in its capacity as Mr. Boleware’s homeowner’s insurer. Although The Hanover Insurance Company is cited as a defendant in the motion for summary judgment, the record does not contain any indication that the petition was amended to substitute Hanover for ABC as Mr. Bole-ware's homeowner’s insurer. Regardless, for ease of reference, we refer in this opinion to the defendants collectively as "Mr. Bole-ware.”

. Although the summary judgment law-La. C.C.P. art. 966-has been amended multiple times in the past few years and substantially amended this past year, the amendments are not material to our analysis in this case.

. The first bite rule is a corollary to the scien-ter theory, which is that “[a] person injured by a domestic animal such as a cat may recover from the animal's possessor or keeper for injuries inflicted only by proving (1) that the animal had a vicious propensity, and (2) the cat’s keeper had knowledge of the vicious propensity.” 7 Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, THE AMERICAN LAW OF TORTS § 21:48 (2011).

. Although negligence generally is based on the owner’s knowledge of the peculiarities of a specific domestic animal, "the owner also is bound to take notice of the general propensities of the class of animal to which it belongs, as well as of the propensities of that particular animal, and of the generally known or likely behavior of animals of that class which might cause injury. Owners must take reasonable care to prevent injuries which are reasonably to be anticipated from such an animal.” Walker v. LeBlanc, 12-0764, p. 9 (La.App. 1 Cir. 12/21/12), 111 So.3d 1069, 1075, writ denied, 13-0539 (La.4/12/13), 110 So.3d 1080, 1081 (citing Granger v. U.S. Fidelity & Guaranty Co., 266 So.2d 526, 530 (La. App. 3d Cir. 1972)), The animal in this case is a cat. "Cats are generally regarded as domestic animals—pets—and, as a consequence, the subject to liability of their owners ... is quite limited.” 7 Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, THE AMERICAN LAW OF TORTS § 21:48 (2011); 12 La. Civ. L. Treatise, TORT LAW § 9:13 (2d ed.) (citing Boyer v. Seal, 553 So.2d 827 (La.1989)) (noting that "[cjats are dealt with more gently [than dogs]” and that "[t]he [Louisiana] Supreme Court showed a willingness in accordance with their unpredictable feline character, saying that the best rule of law for cat-inflicted injuries would be found in T.S. Eliot’s Old Possum's Book of Practical Cats outlining their unpredictable but innocuous behavior,”).

. We, however, do find it necessary to address the necessity of the medical treatment to the extent it overlaps with Ms. Ducote’s negligence per se argument—a liability issue.

. In his deposition, Mr. Boleware testified that his cat was vaccinated. He explained that after Ms. Ducote informed him of the incident, he made efforts to obtain the vaccination records from the SPCA. He further explained that he had his cat vaccinated by the SPCA for free at the local fire station. The SPCA informed him that they did not keep records but maybe the veterinarian who did the vaccinations did; however, the SPCA could not tell him who the veterinarian was that did the vaccinations that year. He thus tried to find the records but was unsuccessful.

. In Zimko v. Am. Cyanamid, 03-0658, pp. 22-23 (La.App. 4 Cir. 6/8/05), 905 So.2d 465, 482-83, we explained this exception as follows:
A “no duty” defense in a negligence case is seldom appropriate. As former Justice Lemmon explained:[A] "no duty” defense generally applies when there is a categorical rule excluding liability as to whole categories of claimants or of claims under any circumstances. In the usual case where the duty owed depends upon the circumstances of the particular case, analysis of the defendant’s conduct should be done in terms of “no liability” or "no breach of duty.” Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585, 597 (Lemmon, J., concurring) .Thus, resolution of a negligence case based on a finding that a defendant has "no duty” should be reserved for the exceptional situation in which there is "a rule of law of enough breadth and clarity to permit the trial judge in most cases raising the problem to dismiss the complaint or award summary judgment for defendant on the basis of the rule.” ' Id. (quoting Professor David W. Robertson, et al,, Cases and Materials on Torts 161 (1989)). Providing examples of "no-duty” rules, Professor Robertson enumerates the following: "rules of law limiting landowners’ responsibilities for premises defects, rules of law to the effect that no one has a cause of action for prenatal injury to an embryo or fetus unless the child survives birth, restrictions on recovery for economic loss unaccompanied by physical injury to person or property, and limits on liability for emotional harm.” David W. Robertson, Allocating Authority Among Institutional Decision Makers in Louisiana State-Court Negligence and Strict Liability Cases, 57 La. L.Rev. 1079, 1094 (1997).

. See Julianna Passe, Resisting Putting the Cat in the Bag: The Case Against Extending Minnesota's Dog Attack Strict Liability Statute to Cats, 37 Hamline L.Rev. 381, 391-92 (2014) (noting that ”[t]he One Bite Rule also allows- the defendant to succeed more easily on a summary judgment motion.... [Wjhen the plaintiff cannot successfully rebut the owner’s affidavits denying any knowledge of the dangerous propensity of the dog, the defendant succeeds on the summary judgment motion and the plaintiff is denied any recovery.”).

. Although Mr. Boleware submitted Dr. Coco’s affidavit late, the trial court allowed him to do so. Dr. Coco's affidavit and his report are thus part of the record on appeal. See Brown v. State, 06-709, p. 6 (La.App. 3 Cir. 11/2/06), 942 So.2d 721, 725 (noting that "once the trial court accepted the late-filed affidavits, it was bound to consider them, as are we, in conducting our de novo review of the record.”).