| | | |
|---|---|---|
| **JOANNE MAJORS** | * | **NO. 2022-CA-0789** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **DILLARD UNIVERSITY** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-07331, DIVISION "B-5"
Honorable Rachael Johnson
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Nakisha Ervin-Knott)

Kriste Talton Utley
Ross A. Ledet
BOYKIN & UTLEY
400 Poydras Street
Suite 1540
New Orleans, LA 70130

  COUNSEL FOR PLAINTIFF/APPELLANT

Darren Albert Patin
HAILEY McNAMARA HALL LARMANN & PAPALE
3445 North Causeway Boulevard, Suite 800
Metairie, LA 70002

  COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**
**MAY 8, 2023**

Joanne Majors ("Ms. Majors") seeks review of the trial court's July 5, 2022 judgment granting Dillard University's ("Dillard") motion for summary judgment and dismissing Ms. Majors' age discrimination, detrimental reliance, and negligent misrepresentation claims. After considering the record before this Court, we reverse the trial court's judgment as it relates to the age discrimination claim and affirm the trial court's judgment as it relates to the detrimental reliance and negligent misrepresentation claims.

## **Relevant Facts and Procedural History**

Ms. Majors began teaching at Dillard University in 2004 as a Spanish Instructor. After Hurricane Katrina, Ms. Majors returned to New Orleans to accept a full-time, non-tenure track position as a Spanish Instructor at Dillard. In the summer of 2010, Ms. Majors' position was eliminated; and she was terminated. Dillard hired Ms. Majors as a part-time adjunct instructor of Spanish in the spring of 2014. Around February 2016, Ms. Aurea Diab, Coordinator of the Languages Department and Ms. Majors' personal friend, informed Ms. Majors that Dillard was re-opening a full-time Spanish instructor position; and Ms. Majors applied for the

position. During the selection process, Ms. Diab communicated to Ms. Majors that she was the unanimous choice of the selection committee for the position; however, Dr. Yolanda Page, Vice President of Academic Affairs at Dillard, was the one to make the final hiring decision.

On June 20, 2016, Ms. Majors was interviewed by the selection committee, which included Ms. Diab and Mr. Cortheal Clark, the Department Chair for Humanities. In conjunction with the hiring process, Dr. John Wilson, Dean of the College of Arts and Sciences at Dillard, interviewed Yelani Feldman, the selection committee's second choice for the full-time position. On August 2, 2016, Ms. Diab notified Ms. Majors via text message that she was not hired for the position and that Dillard had hired Ms. Feldman, who was younger than Ms. Majors, to fill the full-time Spanish instructor position. Soon thereafter, Ms. Majors resigned from her part-time adjunct instructor position at Dillard.

On July 28, 2017, Ms. Majors filed suit alleging breach of contract and detrimental reliance related to the 2010 termination; and age discrimination, detrimental reliance, and negligent misrepresentation related to Dillard's failure to hire her in 2016. Dillard filed a motion for summary judgment on December 3, 2021. The hearing on Dillard's motion for summary judgment was held on June 15, 2022. Ruling from the bench, the trial court denied the motion as it related to the breach of contract claim stemming from the 2010 termination, and granted the motion as it related to the 2016 claims for age discrimination, detrimental reliance, and negligent

misrepresentation. The judgment was signed July 5, 2022.[1] Ms. Majors timely filed this devolutive appeal.

## Standard of Review

"An appellate court reviews a trial court's decision to grant a motion for summary judgment *de novo*." *Guilbeaux v. Lupo Enterprises, L.L.C.*, 2021-0053, p. 4 (La. App. 4 Cir. 5/19/21), 321 So. 3d 447, 451, writ denied, 2021-00844 (La. 10/12/21), 325 So. 3d 1073. When reviewing whether a trial court properly granted summary judgment, the appellate court asks the same questions as the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 26 (La. 7/05/94), 639 So. 2d 730, 750. " 'This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law.' " *Chanthasalo v. Deshotel*, 2017-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So. 3d 1103, 1107 (quoting *Ducote v. Boleware*, 2015-0764, p. 6 (La. App. 4 Cir. 2/17/16), 216 So. 3d 934, 939).

---

[1] In the Appellee's Original Brief and in a separate Motion to Dismiss filed with this Court, Dillard asserts that the appeal should be dismissed because the July 5, 2022 judgment is not a final, appealable judgment; and there was no designation of the judgment as a partial final judgment. Pursuant to this Court's March 6, 2023 order, the case was remanded to the trial court for consideration as to whether its July 5, 2022 judgment denying in part and granting in part the motion for summary judgment filed by Dillard should be designated a final judgment for appeal purposes pursuant to La. C.C.P. art. 1918. On March 24, 2023, the trial court issued a judgment that the July 5, 2022 judgment fully resolved all of Ms. Majors' claims stemming from her 2016 causes of action and designated the July 5, 2022 judgment as a final judgment. During oral argument, counsel for Dillard admittedly abandoned the argument that this appeal should be dismissed in light of the trial court's March 24, 2023 judgment.

## Motion for Summary Judgment

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." Id. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "On a motion for summary judgment the mover bears the burden of proof but is not required to negate all elements of the adverse party's claim if the mover will not bear the burden of proof at trial." *Guilbeaux*, 2021-0053, p. 6, 321 So. 3d at 452 (citing La. C.C.P. art. 966(D)(1)). If the mover meets this burden of proof, then the adverse party must come forth with evidence demonstrating that he will be able to meet his burden at trial. *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078, p. 4 (La. 6/30/00), 764 So. 2d 37, 39-40. "[A]n adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided…, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B).

## Discussion

In her sole assignment of error, Ms. Majors asserts that the trial court erred in granting Dillard's motion for summary judgment as it relates to her claims of age discrimination, detrimental reliance, and negligent misrepresentation stemming from Dillard's failure to hire or promote her in 2016.

### A. Age Discrimination

Ms. Majors' claims of age discrimination are based upon alleged violations of Louisiana Employment Discrimination Law, which includes La. R.S. 23:301 *et seq.*, La. R.S. 23:311 *et seq.*, and La. R.S. 51:2231, that prohibits discrimination in the workplace. Specifically, Louisiana's Age Discrimination in Employment Act (LADEA), La. R.S. 23:311-314, makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to compensation; or terms, conditions, or privileges of employment because of the individual's age. La. R.S. 23:312(A)(1). Because the LADEA "is identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally looked to federal case law for guidance." *LaBove v. Raftery*, 00-1394, 00-1423, p. 9 (La. 11/28/01), 802 So.2d 566, 573.

" 'A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof.' " *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. *Berquist*, 500 F.3d at 349. If a plaintiff produces direct evidence of discrimination, no further showing is required, and the burden shifts to the employer. *Id.*

When reviewing the granting of a summary judgment motion to dismiss an individual's age discrimination claims based on circumstantial evidence, courts employ the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which is as follows:

> First, the employee must prove a *prima facie* case of discrimination. The requirements for a *prima facie* case vary slightly with the type of claim brought but an employee's establishment of a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee.
>
> To rebut the presumption of discrimination created by the employee's *prima facie* case, the employer must articulate a legitimate, nondiscriminatory reason for its decision. As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason. But, if the employer meets its production burden, the presumption of discrimination created by the plaintiff's *prima facie* case falls away and the factual inquiry becomes more specific. To avoid dismissal on the employer's motion for summary judgment, the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination. In other words, after a defendant employer has met its burden of production, an employee plaintiff, like any other civil plaintiff, must now demonstrate that there is a material issue of disputed fact as to discrimination, the ultimate question *vel non.* In some instances, proof of pretext alone will suffice.

*Patrick v. Ridge*, 394 F.3d 311, 315-16 (5th Cir. 2004).

"Generally, a *prima facie* ADEA case of failure to hire or promote consists of evidence that the plaintiff: (1) was within the protected class and was adversely affected; (2) was qualified for the position; and (3) the job remained open or was filled by someone younger." *Lindsey v. Prive Corp.*, 987 F.2d 324, 326-27 (5th Cir. 1993). An examination of the hearing transcript demonstrates that Dillard concedes that Ms. Majors has established a *prima facie* case for age discrimination, as Dillard's counsel states, "the [f]irst lob is the plaintiff to establish that she satisfies

7

the prima facie case, which here, we would suggest that she does. She was older than Ms. Feldman, she was qualified for the position, and the university made an employment decision where the younger person was hired." Therefore, this Court does not address the first step in the *McDonnell Douglas* framework. Rather, we proceed to the second step; and the burden shifts to Dillard to articulate a legitimate, non-discriminatory purpose for its decision not to hire Ms. Majors.

Dillard attempts to utilize Dr. Page's sworn affidavit to establish a legitimate, non-discriminatory reasoning for its decision not to hire Ms. Majors. In her affidavit, Dr. Page explains the reasons why Ms. Feldman, and not Ms. Majors, was selected for the position. Dr. Page states that Dr. Wilson interviewed Ms. Feldman and was impressed with her interview, particularly her approach to teaching Spanish. Dr. Wilson thought Ms. Feldman's approach would lower the course's historically high "drop, fail and withdrawal" rate. Dr. Page also states that she noted Ms. Majors' performance as an adjunct professor at Dillard, as Ms. Majors was the subject of student complaints regarding her teaching and grading methods. Based on this evidence, it would appear that Dillard has articulated legitimate, nondiscriminatory reasons for its hiring decision.

When assessing whether an employer has offered a legitimate, nondiscriminatory reason for its decision, "an employer may not prevail with respect to this ultimate inquiry by offering a 'legitimate and sufficient reason for its decision if that reason did not motivate it *at the time of the decision.*'" *Patrick*, 394 F.3d at 319 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S.Ct. 1775, 104

8

L.Ed.2d 268 (1989)). "As the ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant at this stage of the inquiry." *Patrick*, 394 F.3d at 319.

There is evidence in the record that at the time of Dillard's hiring decision, these non-discriminatory reasons could not have influenced the decision-making process. During Dr. Page's deposition, she admits that the "drop, fail and withdrawal" rates were troublesome for years as to all language courses across the board; and she never compared Ms. Majors' rates to any other professors' rates or Ms. Feldman's rates. Dr. Page also states that she did not know if the hiring committee reviewed anyone's disciplinary history as part of the hiring decision process, and she did not look at Ms. Majors' disciplinary record. Additionally, Dr. Page admits that Dillard never reviewed student evaluations as part of the hiring process. Although Dillard maintains that the "drop, fail and withdrawal" rates and Ms. Majors' performance, including student complaints, as an adjunct professor were the reasons for not hiring her for the full-time position, there is evidence in the record that supports a finding that these reasons could not have influenced the decision-making process because this information was admittedly not reviewed at the time of the hiring decision. Dillard has failed to present a legitimate, nondiscriminatory reason displaying its reasoning *at the moment* the hiring decision was made to warrant the granting of summary judgment on this issue.

As we hold that Dillard has not met its burden of producing a legitimate, non-discriminatory reason for not hiring Ms. Majors, we do not reach the question of whether Ms. Majors could demonstrate pretext, and whether age discrimination actually motived Dillard's decision not to select her for the full-time position. Ms. Majors' *prima facie* case pretermits summary judgment on her age discrimination claim. Accordingly, the trial court erred in granting Dillard's motion for summary judgment as it relates to Ms. Majors' age discrimination claim.

### B. Detrimental Reliance

On the basis of the same facts giving rise to her age discrimination claim, Ms. Majors asserts that she is entitled to relief under the doctrine of detrimental reliance. Ms. Majors maintains that the trial erred in granting Dillard's motion summary judgment disposing of her detrimental reliance claim.

> The theory of detrimental reliance is codified at La. C.C. art. 1967:
>
> …A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Suire v. Lafayette City-Parish Consol. Gov't*, 2004-1459, 2004-1460, 2004-1466, p. 31 (La. 04/12/05), 907 So. 2d 37, 59. In order to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and

enforceable contract. *Id.* "[T]he focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." *Suire*, 2004-1459, 2004-1460, 2004-1466, pp.31-32, 907 So. 2d at 59.

In her Petition, Ms. Majors alleges that she detrimentally relied upon the express promise of Dillard that she was the selected candidate for the open, full-time instructor position in 2016 and did not seek alternative employment based on this promise. Ms. Majors' entire detrimental reliance argument is based on verbal and email communications between Ms. Majors and Ms. Diab. It is undisputed that Ms. Majors and Ms. Diab were personal friends and that Ms. Diab wanted her friend to be hired for the full-time position. Based on their personal relationship, Ms. Diab communicated with Ms. Majors about the open position, including informing Ms. Majors that the selection committee unanimously voted to recommend her for the position. Additionally, Ms. Diab forwarded email communications between herself and Dr. Page to Ms. Majors, which indicated that certain members of the selection committee and Dr. Page had decided which applicant was going to be hired. In her response to the email, Dr. Page never confirms nor denies whether an applicant had been selected and only states that the hiring for the position would need to be temporarily deferred. But, these emails were forwarded to Ms. Majors without the knowledge or consent of the selection committee or Dr. Page.

The evidence shows that Ms. Diab's communications with Ms. Majors were not authorized by the hiring committee or Dr. Page. Rather, Ms. Diab was communicating with Ms. Majors as her friend and not in her capacity as a selection committee member. Further, the deposition testimony of Ms. Majors and Ms. Diab, establishes that Ms. Majors knew that neither Ms. Diab nor the selection committee had hiring authority, and that Dr. Page was the individual with hiring authority. Since Ms. Diab did not have hiring authority, it was unreasonable for Ms. Majors to rely on their personal communications. As such, the trial court did not err in granting Dillard's motion for summary judgment as it relates to Ms. Majors' detrimental reliance claim.

### C. Negligent Misrepresentation

Louisiana is a jurisdiction that allows recovery in tort for purely economic loss caused by negligent misrepresentation where privity of contract is absent. The delictual action of negligent misrepresentation was recognized by the Louisiana Supreme Court in *Devore v. Hobart Mfg. Co.,* 367 So.2d 836, 839 (La. 1979). To prevail in an action for negligent misrepresentation, the plaintiff must prove that the defendant had a duty to supply correct information, that the defendant breached that duty, and that the defendant's breach caused damages to the plaintiff. *National Council on Compensation Ins. v. Quixx Temp. Servs., Inc.,* 1995-0725, p. 3 (La. App. 4 Cir. 11/16/95), 665 So. 2d 120, 122.

To sustain a cause of action for negligent misrepresentation, an actual misrepresentation must exist. Ms. Majors asserts that Dillard provided her with

inaccurate information regarding the full-time instructor position. She maintains that Dillard owed her a legal duty to provide accurate information about the position and knew or should have known that she would rely upon its representations concerning the full-time position. The alleged misrepresentations were in fact not misrepresentations, but were factual information regarding the unanimous recommendation. As stated earlier, the deposition testimony of Ms. Majors and Ms. Diab establishes that Ms. Diab communicated to Ms. Majors that the selection committee unanimously selected her for the position; however, neither Ms. Diab nor the selection committee had hiring authority. Dr. Page was the only individual with hiring authority. Without any evidence of an actual misrepresentation, the questions of duty, breach of duty, and damages are moot. Therefore, the trial court did not err in granting Dillard's motion for summary judgment as it relates to Ms. Majors' negligent misrepresentation claim.

### Decree

For the forgoing reasons, the trial court's July 5, 2022 judgment granting summary judgment in favor of Dillard is reversed as it relates to Ms. Majors' age discrimination claim and affirmed as it relates to her detrimental reliance and negligent misrepresentation claims. We remand the matter to the trial court for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

13